UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-62261-CIV-COHN/SELTZER

ROBERT THOMAS, FREDERICK LAUFER,
and BRYAN KAUFMAN,

    Plaintiffs,

v.

TROY R. BROWN, GARY S. DESBERG,
JERRY A. GORSKI, EDMUND G. KAUNTZ,
WILLIAM M. MILLS, PAUL J. SINGERMAN,
MICHAEL R. STAVNICKY, RONALD J. TEPLITZKY
individually, and SINGERMAN, MILLS, DESBERG
& KAUNTZ CO. L.P.A., a foreign limited professional
association doing business within Florida,

    Defendants.
_____/

**ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DE 27], Plaintiffs' Amended Response in Opposition [DE 86], Defendants' Reply [DE 93], Plaintiffs' Motion for Leave to Amend [DE 81], Defendants' Response in Opposition [DE 96] and all of the jurisdictional discovery materials filed in regard to the motion to dismiss.[1] The Court has carefully considered the entire record in this case, and is otherwise fully advised in the premises.[2]

---

[1] Although Plaintiffs had received an extension until March 14, 2012 [DE 98], to file their reply memorandum, no reply was filed by close of business on March 21, 2012.

[2] Upon request of the Plaintiffs [DE 56], the Court had set a hearing on Defendants' Motion to Dismiss [DE 88], and then reset the hearing due to the parties' schedule [DE 95]. Plaintiff then filed an unopposed motion to cancel the hearing [DE 104], which the Court granted [DE 105].

## I.  BACKGROUND

This action concerns a dispute over funds disbursed after an asset sale.  According to the complaint filed in state court [DE 1-2] and the proposed Amended Complaint [DE 81-1], Plaintiffs Robert Thomas, Frederick Laufer, and Bryan Kaufman ("Plaintiffs") are minority shareholders of Apex Radiology Inc. ("Apex"), a Florida corporation, holding 11%, 17%, and 21%, respectively, of Apex.  On June 29, 2007, the shareholders of Apex elected Wade Rome, a 45% Apex owner at the time and Apex's President, to be their representative in negotiating an asset sale with Franklin & Seidelmann, LLC ("F&S").[3]  In July of 2007, Apex entered into an Asset Purchase Agreement to sell all of its assets to F&S.  The initial proceeds were to be used to pay down Apex's debts and then distribute funds to shareholders on a pro-rata basis.  After making the initial payment and two quarterly payments, F&S stopped further payments to Apex.  In May of 2008, Rome hired Defendant Singerman Mills Desberg & Kauntz Co., L.P.A. ("Singerman Mills"), a law firm in Ohio, to represent Apex in an action against F&S in federal court in Ohio.  However, as now described in the proposed Amended Complaint, Defendant Singerman Mills was "retained to represent Rome pursuant to an engagement letter sent by Defendants to Rome."  Amended Complaint, ¶ 35; Exhibit X to Plaintiffs' Amended Response [DE 86-26].  Neither Apex nor the Apex shareholders were named as clients.  Id.  Nonetheless, Defendants billed Apex and the Apex shareholders for their legal bills and did not seek a conflict waiver, though Defendants' billing records indicate that "Wade Rome" was the

---

[3]  On or about March 4, 2010, Rome acquired additional shares from another minority shareholder, putting him at 50.823% of ownership.  Amended Complaint at ¶ 13, n. 1 [DE 81-1].

client.  Id., ¶¶ 36-37; Exhibit Y to Plaintiffs' Amended Response [DE 86-27].  Plaintiffs contributed their own funds, through Rome, to finance the litigation against F&S.  Plaintiffs allege that they believed that Defendants also represented them as Apex shareholders.  Finally, unbeknownst to Plaintiffs at the time, Rome also hired Defendants to represent him in a personal action against F&S.

The action filed by Defendants against F&S on behalf of Apex was stayed while the parties arbitrated the claims.  In late November of 2009, the arbitration panel ruled in favor of Apex, resulting in a significant net award for Apex.  Although Apex regularly maintained its bank account in Florida, on December 4, 2009 a wire transfer of over $1.5 million was sent by Defendants to an Apex bank account in Missouri set up by Wade Rome.  Amended Complaint, ¶¶ 74 - 79; Exhibit Z to Plaintiffs' Amended Response [DE 86-28].  Plaintiffs allege that these funds were never divided among shareholders and they never received any proceeds.  Plaintiffs have filed suit in Florida state court to recover that money from Rome and his wife.  Id., ¶ 146.

Meanwhile, on November 9, 2009, a creditor of Apex sued Apex and its individual shareholders in Florida for non-payment of a debt.  Id., ¶ 68. Plaintiffs began to realize that Apex's debts were not paid off by Rome from the initial payment by F&S.  On November 30 and December 3, 2009, Plaintiffs notified Defendants that they were now represented by Aaron Resnick, Esq. and requested that Defendants communicate with Mr. Resnick about all matters.  Id., ¶¶ 69-70.

In this action, Plaintiffs contend that Singerman Mills, along with eight individual shareholders of Singerman Mills (collectively, "Defendants"), breached their duty to Plaintiffs as counsel for the Apex shareholders by entrusting the arbitration award funds

3

solely to Rome. See Counts I and II.[4] Defendants deny that they ever represented Plaintiffs (the individual Apex shareholders). Plaintiffs also allege that Defendants have breached Ohio Rules of Professional Conduct by not obtaining waivers of conflict from Plaintiffs (Count III).[5] Plaintiffs allege negligence, gross negligence, fraud, civil theft, aiding and abetting civil theft, conspiracy to commit civil theft, and aiding and abetting conversion by Defendants in their failure to transfer funds from the arbitration award to Plaintiffs. Counts IV through X of Amended Complaint.[6] Plaintiffs seek an award of actual damages in addition to declaratory relief.

Defendants timely removed this action from state court on the grounds of diversity jurisdiction. Defendants moved to dismiss the action for lack of personal jurisdiction [DE 27]. Plaintiffs moved for remand to state court [DE 31]. The Court denied the motion to remand [DE 40] and granted Plaintiffs' motion for jurisdictional discovery [DE 47]. After completing jurisdictional discovery, Plaintiffs filed their opposition to the motion to dismiss. Plaintiffs have also sought to dismiss four individual Defendants [DE 80] and have moved for leave to amend its complaint.

Defendants are attorneys and shareholders in a law firm with offices in Ohio. The attorneys do not practice law in Florida, do not own property in Florida, do not have bank

---

[4] The Amended Complaint pleads Legal Malpractice as Count II.

[5] This claim has been removed from the Amended Complaint and replaced with a claim for breach of fiduciary duty and duty of care as escrow agent/trustee of funds for sending the arbitration proceeds to a bank account in Missouri controlled by Wade Rome rather than Apex's accounts in Florida. Amended Complaint, ¶¶ 175-198.

[6] Plaintiffs have dropped claims in the initial Complaint that sought a declaratory judgment that Defendants represented them, and that Defendants' current and future representation of the Romes is a conflict of interest. Complaint, ¶¶ 202-239 [DE 1-2].

accounts in Florida, nor do they market themselves to Florida. Over the last four years, only 1.2% of the Singerman Mills firm's clients are in Florida or have a Florida connection, while just 3.6% of their collected fees come from Florida. Defendant Singerman, Mills et al's Notice of Service of Answers to Plaintiffs' Jurisdictional Interrogatories at pp. 6-7 [DE 60-1]. Plaintiffs also have discovered some of these instances in which Defendants did work for Florida clients. See Plaintiffs' Amended Response at pp. 4-6.

In the action that precipitated this lawsuit, Defendants represented Apex, a Florida corporation, in a lawsuit filed in Ohio. Defendants billed 743 hours representing Apex in the related action, and billed $157,000 in legal fees. Plaintiffs put forth evidence by affidavit that individual Defendant Michael Stavnicky communicated with Plaintiffs Bryan Kaufman and Fred Lauder while these Plaintiffs were in Florida [DE 59-1]. These communications were in the course of Stavnicky representing Apex in the litigation and arbitration against F&S. There is no evidence that Defendants ever traveled to Florida to meet with Plaintiffs. Plaintiffs all believed that Defendants were representing them as individual shareholders, and not just representing Apex.

## II.  DISCUSSION

### A.  Preliminary Matters

At the time Plaintiffs filed their opposition to the motion to dismiss, Plaintiffs also filed a Notice of Voluntary Dismissal Without Prejudice as to Defendants Troy Brown, Gary Desberg, Paul Singerman, and Ronald Teplitzky [DE 80] and a Motion for Leave to Amend Complaint [DE 81]. The Amended Complaint removes four individual defendants, adds additional allegations and claims, and removes other claims. Defendants oppose

the motion for leave to amend on the grounds of futility. Defendants contend that the additional allegations of the Amended Complaint do not sufficiently address the lack of personal jurisdiction.

Plaintiffs suggest that the Amended Complaint further supports personal jurisdiction. However, the Court concludes that even if the motion for leave to amend is granted, the Court must decide the pending personal jurisdiction motion under Fed. R. Civ. P. 12(b)(2), now fully briefed and argued. As discussed below, because Defendants have submitted affidavits supporting their motion to dismiss and Plaintiffs have had the opportunity to conduct jurisdictional discovery, the Court may look beyond the allegations of the Amended Complaint. For purposes of deciding the personal jurisdiction issue, the Court will deem the Amended Complaint as the operative pleading.[7]

## B. Personal Jurisdiction

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. When jurisdiction is based on diversity, Rule 4(e) of the Federal Rules of Civil Procedure requires that assertion of jurisdiction be determined by the state long-arm statute. Cable/Home Communication Corporation v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990). If there is a basis for the assertion of personal jurisdiction under the state statute, the Court must next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and

---

[7] Defendants have also moved to dismiss the initial Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Because the Court is granting the motion to dismiss for lack of personal jurisdiction, the Court need not reach the Rule 12(b)(6) issues.

substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant.  Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990); International Shoe Co. v. Washington, 326 U.S. at 316).

When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant.  See Cable/Home Communication, 902 F.2d at 855.  A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.  E.g. Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted).  The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  However, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.[8] Robinson, 74 F.3d at 255 (11th Cir. 1996) (citing Madara, 916 F.2d at 1514).  In this action, the facts are not in dispute.

## C.  Florida Long-Arm Statute

According to Plaintiffs' Amended Response, Plaintiffs assert jurisdiction under

---

[8] Plaintiffs contend that Defendants' affidavits are self-serving and conclusory, and therefore are insufficient to rebut the allegations of the Complaint.  The Court disagrees.  The burden remains on Plaintiffs to show that personal jurisdiction exists.

Florida Statutes §§ 48.193(1)(a), (b), (g) and (2).  Amended Response at p. 15.[9]  These subsections state in relevant part that:

> (1)  Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.
> . . .
>
> (g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
> . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

### 1.  Operating a Business

Plaintiffs argue in opposition to the motion to dismiss that Singerman and Mills, the Defendant law firm, was "involved in numerous business dealings with Florida companies and individuals, including Apex and its shareholders, in providing legal services." Plaintiffs' Response at p. 21 [DE 86].  However, the evidence in the record indicates that the use of the term "numerous" is conclusory, as that the total Florida dealings of

---

[9] The Court notes that Plaintiffs' Amended Complaint lists as an additional basis for jurisdiction language from Fla. Stat. § 48.193(f) "caused injury to persons and/or entities in the State of Florida by acts or omissions outside the state involving the solicitation, sale and/or exercise of services in the state."  Amended Complaint, ¶ 9 [DE 81-1].  However, Plaintiffs do not address this subsection in their Amended Response to the Motion.

Defendants were relatively small, numbering 1.2% of the firm's clients and 3.6% of the fees collected over the past four years.

The Eleventh Circuit Court of Appeals, in interpreting Florida law, has stated that:

> "In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam). Factors relevant, but not dispositive, to this analysis include the presence and operation of an office in Florida, *see Milberg Factors, Inc. v. Greenbaum,* 585 So.2d 1089, 1091 (Fla. Dist. Ct. App.1991), the possession and maintenance of a license to do business in Florida, *see Hobbs v. Don Mealey Chevrolet, Inc.,* 642 So.2d 1149, 1153 (Fla. Dist. Ct. App.1994), the number of Florida clients served, *see Milberg Factors, Inc.,* 585 So. 2d at 1091, and the percentage of overall revenue gleaned from Florida clients, *see id.; Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 628 (11th Cir. 1996).

<u>Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.</u>, 421 F.3d 1162, 1167 (11th Cir. 2005) (rejecting jurisdiction over an out of state auditing company that worked for a Florida based partnership by communicating by telephone and accessing the Florida computers where Florida clients accounted for less than five percent of total business). Applying this decision to the present case, the Court concludes that Defendants do not operate a business in Florida for purposes of the long-arm statute.

### 2.  Committing a Tortious Act

Plaintiffs' primary argument in favor of personal jurisdiction is that Defendants committed a tortious act within Florida because Plaintiffs' economic interests were impacted in Florida. Plaintiffs rely upon <u>Wendt v. Horowitz</u>, 822 So.2d 1252, 1260 (Fla. 2002), wherein the Florida Supreme Court held that "telephonic, electronic or written communications into Florida may form the basis for personal jurisdiction under section

9

48.193(1)(b) if the alleged cause of action arises from the communications. . . ." Wendt involved a non-resident attorney who advised a Canadian corporation and Florida investors that certain notes and certificates were not securities under Florida and federal law, and who prepared documents for use in Florida. Wendt, 822 So.2d at 1254-1255 (emphasis added). In issuing its opinion in Wendt, the Florida Supreme Court did not determine whether personal jurisdiction had been established. Id. at 1260.

Plaintiffs also cite to Beta Drywall Acquisition, LLC v. Mintz & Fraade, P.C., 9 So.3d 651 (Fla. Dist. Ct. App. 2009), wherein a Florida District Court of Appeal found personal jurisdiction over a New York law firm for committing the tort of legal malpractice in Florida. The attorneys were engaged to prepare agreements to be filed in Florida in connection with acquisition of the assets of a Florida company. The plaintiffs alleged that the attorneys were negligent for failing to formalize a written operating agreement prior to or contemporaneously with the filing of the acquisition articles. Beta, 9 So. 3d at 652. The court concluded that though most of the legal services were performed in New York, the defendants caused faulty legal documents to be filed in Florida resulting in injury to a Florida resident, thus creating jurisdiction under § 48.193(1)(b). Similarly, Plaintiffs rely on Deloitte & Touche v. Gencor Industries, Inc., 929 So.2d 678, 683 (Fla. Dist. Ct. App. 2006), wherein the court found personal jurisdiction because a non-resident accounting firm (allegedly) sent false reports to Florida that it knew would be relied upon in Florida and were relied upon in Florida by plaintiff.

Defendants point out that the Beta decision was distinguished in another action against a non-resident law firm. In American Torch Tip Co. v. Dykema Gossett PLLC, 2011 WL 3171811 (M.D. Fla. July 8, 2011), a Chicago law firm, which advertised itself as

a national law firm, represented a Florida plaintiff who was sued for patent infringement in New Hampshire.  The non-resident attorney sent plaintiff discovery to sign or approve, traveled to Florida to prepare plaintiff's defenses, sent invoices to plaintiff in Florida and was paid from Florida.  The court found that the non-resident attorney's Florida contacts were insufficient for jurisdiction under § 48.193(1)(b).

Defendants also rely upon the decision in Hirsch v. Weitz, 16 So. 3d 148 (Fla. Dist. Ct. App. 2009), wherein the court did not find jurisdiction over a New York attorney who performed legal work in New York concerning a divorce petition and sale of a New York business.  After the New York court entered judgment, the former wife brought a garnishment action in Florida.  The husband had moved to Florida during the divorce negotiations, had paid the attorney from Florida, and had communicated with the attorney from Florida.  The Court concluded that if jurisdiction were found, it would mean "virtually any lawyer who communicated with a Florida resident regarding legal advice could be sued for legal malpractice in Florida." Hirsch, 16 So.3d at 151.

Faced with these competing precedents, the Court concludes that Plaintiffs have failed to show that Defendants committed a tort in Florida.  The Florida Supreme Court decision in Wendt requires that the alleged cause of action must arise from the communications into Florida.  The communications in this action are limited to Defendants' witness preparation of Plaintiffs in the arbitration related to the Ohio action by Apex against F&S.  However, the alleged financial injury to Plaintiffs that forms the basis of the negligence, gross negligence, civil theft and conspiracy claims was the approval by Defendants of the wire transfer of the funds from the arbitration award to the Apex Missouri bank account set up by Wade Rome, rather than to Apex's accounts in Florida.

Additional injuries were alleged due to Defendants' failure to inform Plaintiffs that they also represented Wade Rome in his individual action against F&S. However, there is no evidence that the breach of duty or legal malpractice actions arose from an actual communication into Florida, nor is there evidence (as there was in Beta and Deloitte & Touche) that Defendants were to take any action in Florida or prepare any documents for use in Florida. Therefore, Plaintiffs have failed to show that jurisdiction is warranted under § 48.193(1)(b).

### 3. Breach of Contract

Plaintiffs contend that Defendants' failure to make the arbitration award payment to Florida, rather than Missouri, breached a contract. Under Florida law, to find jurisdiction pursuant to § 48.193(1)(g), a plaintiff must show that "the defendant failed to perform an act or acts whose performance was to be in Florida and that such breach formed the basis for the cause of action for which relief is sought by the plaintiff." Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367, 368 (Fla. Dist. Ct. App. 1978). Defendants argue that there is no contract between Plaintiffs and Defendants; no claim for breach of contract; and there was no contractual obligation to be performed by Defendants in Florida.

This Court agrees with Defendants that there is no evidence that Defendants had any contractual obligation to Plaintiffs to send the arbitration award to any particular bank account owned by Apex. The retainer agreement between Defendants and Wade Rome (or Apex) does not address transmission of settlement funds. Exhibit X to Plaintiffs' Amended Response. At best, to the extent Defendants even had such a duty to Apex to only send the funds to a Florida account, Plaintiffs would not have standing to assert a

breach of that contract.  Moreover, the arbitration award was not in favor of Plaintiffs, as individuals or even as shareholders, but rather was in favor of Apex.  As Plaintiffs have failed to meet their burden to show Defendants breached a contractual obligation in Florida, § 48.193(1)(g) would not apply to Defendants in this action.

### 4.  Substantial and Not Isolated Activity

Plaintiffs ask the Court to find that jurisdiction is proper under § 48.193(2) because Defendants engaged in substantial and not isolated activity within Florida.  The term "substantial and not isolated activity . . . has been found to mean 'continuous and systematic general business contact' with Florida."  Woods v. Nova Companies Belize Ltd., 739 So.2d 617, 620 (Fla. Dist. Ct. App. 1999).  In Woods, the court found the defendant met this standard: "By selling approximately eighteen percent of its product to Florida importers, moving nearly all of its product through the state, purchasing equipment and supplies from Florida suppliers, utilizing storage facilities in Florida, and establishing essential business relationships in this state."  739 So.2d at 620.  Defendants in the present action have less than 4% of their gross revenues derived from Florida clients.

In American Financial Trading Corp. v. Bauer, 828 So.2d 1071 (Fla. Dist. Ct. App. 2002), a Texas resident who initiated 120 transactions to invest $465,000 with a Florida company was deemed to have continuous and systematic business contact with Florida, despite the lack of physical contact with Florida.  The cause of action in Bauer related to breach of a settlement agreement that in turn arose from Bauer's investments with the Florida company.  Id. at 1074-75.  The court concluded that personal jurisdiction was proper under § 48.193(2) because Bauer initiated and maintained continuous contact with

the Plaintiff.  Id. at 1075.

Bauer relied upon Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc., 726 So.2d 313, 314 (Fla. Dist. Ct. App. 1999), wherein a New York company that sold 19 lists over two years with a value of $198,000 was deemed not subject to personal jurisdiction under § 48.193(1)(a).  The Bauer court distinguished Travel Opportunities because Bauer initiated the transactions with the Florida plaintiff, while in Travel Opportunities, it was the Florida plaintiff who initiated the transactions with a New York seller of goods.  Here, there is no evidence that Defendants ever initiated business opportunities in Florida – rather, their Florida "business" stems from companies or individuals who find Defendants in Ohio and use them almost exclusively for Ohio purposes – but who happen to live or have business in Florida as well.

Upon consideration of the record as a whole, Defendants' business in Florida is isolated and not substantial.

### D.  Due Process

Even if the Court did find that Florida's long arm statute reached Defendants' conduct, the Due Process Clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation, 326 U.S. 310, 319 (1945).   The due process component of personal jurisdiction involves a two-part inquiry.  In the first prong, the Court must consider whether Defendant engaged in minimum contacts with the state of Florida.  In the second prong, the Court must consider whether the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice."

14

Cronin v. Washington Nat'l Ins. Co., 980 F.2d 663, 670 (11th Cir. 1993) (citing Int'l Shoe Co., 326 U.S. at 316 ; Madara, 916 F.2d at 1515-16).

### 1.  Minimum Contacts

Minimum contacts involve three criteria:  First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being hailed into court there.   Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 631 (11th Cir. 1996).  The Supreme Court recently reiterated the importance of the "purposeful availment" requirement.  J. McIntyre Machinery, Ltd. v. Nicastro, 131 S.Ct. 2780, 2787 (2011).[10]

As noted above, Defendants have no offices, telephone, bank account, or property of any kind in the state of Florida.  Defendants have no ongoing contacts with Florida, except for an occasional professional conference attending by one individual attorney defendant.  On the other hand, the few contacts with Florida in this action – telephone and electronic communications with Plaintiffs Laufer and Kaufman to prepare for the arbitration – were related to plaintiff's cause of action.  However, these contacts did not involve purposeful availment of conducting business in Florida as the arbitration and the underlying litigation for which Defendants were hired to represent Apex were not conducted in Florida.  Although Defendants were representing a Florida corporation at the time, a non-resident attorney who represents a Florida entity in another state and never

---

[10] In Nicastro, this point of law was supported in the lead opinion issued by four justices, and a separate concurrence by two more justices.

comes to Florida for anything to do with the action would not reasonably anticipate being sued in Florida for those activities.  Therefore, the Court concludes that these contacts do not lead to the finding that Defendants should reasonably anticipate being hailed into court here over this incident.

### 2.  Traditional Notions of Fair Play and Substantial Justice

As the Court does not find that Plaintiffs have shown a basis for the assertion of personal jurisdiction under the Florida long-arm statute, nor that Defendants have minimum contacts with Florida, the Court need not complete the due process analysis.

### III.  CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1. Plaintiffs' Motion for Leave to Amend [DE 81] is hereby **GRANTED** for purposes of considering Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DE 27];

2. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [DE 27] is hereby **GRANTED**;

3. The above-styled action is hereby **DISMISSED** for lack of personal jurisdiction over Defendants;

4. The Clerk may close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of March, 2012.

*[signature]*
JAMES I. COHN
United States District Judge

Copies furnished to:
counsel of record

16